**Kelly Diane McDOWELL, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 06–07–00015–CR.**

Court of Appeals of Texas, Texarkana.

Submitted June 26, 2007.

Decided Aug. 28, 2007.

Gwinda L. Burns, Law Office of Gwinda Burns, Fort Worth, for appellant.

Kimberly Colliet Wesley, Charles M. Mallin, Asst. Dist. Atty's, for appellee.

\* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

Before CARTER, MOSELEY and CORNELIUS,\* JJ.

## OPINION

WILLIAM J. CORNELIUS, Justice.\*\*

In a jury trial, Kelly Diane McDowell was convicted of arson. The jury assessed McDowell's punishment at seventy years' confinement, and found that she used a deadly weapon, gasoline, in committing the offense.

McDowell appeals, raising three issues: (1) legal and factual insufficiency of the evidence to support the conviction; (2) insufficient evidence to support the jury's deadly weapon finding; and (3) the trial court's denial of McDowell's application for community supervision. We overrule these issues and affirm the judgment.

McDowell lived for a time with her aunt and uncle, Margaret and Bill McDowell, in Haltom City. She left their home when her uncle asked her to leave. On November 20, 2005, she came back and spent the day with her Aunt Margaret. Bill McDowell was away, and Margaret consented for Kelly to stay the night. The next day, while her aunt was away from home at work, Kelly set fire to the house by igniting gasoline she had poured throughout the structure. She turned the house's heating system on and placed a can of spray paint on the stove because she had been told that doing so would make objects in the house warmer and the fire more intense. Firefighters testified at trial that the fire was so intense the heat melted the fire-resistant helmets they wore while fighting the fire. One firefighter suffered burns on his ear and hand, and another suffered severe second-degree burns on his ears through his fire-resistant helmet. Firefighters found traces of a flammable

\*\* Chief Justice, Retired, Sitting by Assignment.

liquid in several areas of the house, and they concluded that the fire was intentionally set by igniting the gasoline that had been poured throughout the house. On the day before the fire, McDowell took her aunt and uncle's computer from the house, along with six guns, two of which she pawned on the day of the fire. McDowell also pawned her aunt and uncle's VCR, DVD player, and a rifle. She took the computer with her to the motel where she stayed after she checked in on the night the fire was set.

McDowell signed a written statement and gave oral testimony at trial in which she freely admitted setting the fire by using gasoline, but she said she set the fire because of duress by her former boyfriend. She also admitted burning a motor home in Wise County about three days before she burned her aunt and uncle's home.

In her first issue, McDowell contends the evidence is legally and factually insufficient to support her conviction. She argues the evidence is insufficient in two respects: it fails to show that her act of setting fire to the house was an act "clearly dangerous to human life"; and the evidence shows that, in setting the fire, she was acting under duress.

In a review of the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). We review all the evidence in the record, both direct and circumstantial. In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong or manifestly un-

just or against the great weight and preponderance of the evidence. *Roberts v. State,* 220 S.W.3d 521 (Tex.Crim.App. 2007).

■ McDowell was charged with arson under Section 28.02(a)(2)(A) of the Texas Penal Code, which provides, among other things, that it is an offense to start a fire or cause an explosion with intent to damage any habitation, knowing that the habitation is within the limits of an incorporated city or town. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(A) (Vernon Supp.2006). It is not necessary to prove that the arson was clearly dangerous to human life in order to convict a person for the offense described in Section 28.02(a)(2)(A) of the Texas Penal Code. The "clearly dangerous to human life" standard is applicable to prosecutions for felony murder, not arson. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003). The case relied on by McDowell for this proposition is *Lawson v. State,* 64 S.W.3d 396, 397–99 (Tex.Crim.App.2001), which is a case of felony murder.

■ As to McDowell's second issue, we find legally and factually sufficient evidence to justify the jury's rejection of her duress defense. Duress may be a defense to criminal conduct if the actor committed the proscribed conduct because she was compelled to do so by threat of imminent death or serious bodily injury to herself or another. TEX. PENAL CODE ANN. § 8.05 (Vernon 2003). Duress is an affirmative defense that the defendant must prove by a preponderance of the evidence, and it is available only if the threat of death or serious bodily injury is imminent and is such that would render a person of reasonable firmness incapable of resisting the pressure. *United States v. Willis,* 38 F.3d 170 (1994); TEX. PENAL CODE ANN. § 8.05(a), (c); *Devine v. State,* 786 S.W.2d 268, 269–70 (Tex.Crim.App.1989); *Anguish v. State,* 991 S.W.2d 883, 886–87 (Tex.App.-

Houston [1st Dist.] 1999, pet. ref'd); *Smith v. State*, 949 S.W.2d 333, 336–37 (Tex.App.-Tyler 1996, pet. ref'd).

In an attempt to prove her defense of duress, McDowell stated in her written statement and her testimony at trial that she formerly had a boyfriend, Reginald Washington, who is an African–American, and that her family was upset because she was dating a person of that ethnicity, and they disowned her as a result. She said she tried to end her relationship with Washington because he was not a good person, but Washington thought she wanted to end their relationship because of her family's disapproval of him. McDowell said Washington thought she would restore their relationship if her family was unable to help her, so he threatened to kidnap her children and burn down her family's house with her family in it unless she agreed to burn it down. McDowell's nineteen-year-old daughter was stationed at Fort Bliss in El Paso and her two boys, fifteen and sixteen years of age, lived with McDowell's ex-husband in Boyd, Texas. McDowell said she did not remember the exact date Washington made the threats against her family, but she thought he made them about six months before she set the fire.

■ There is ample evidence to justify the jury's rejection of McDowell's duress defense. First, the threats by Washington, even if the jury believed they were made, were too remote in time from McDowell's act of burning the house. In order for a threat to constitute duress under Section 8.05(a) of the Texas Penal Code, it must be a threat of imminent death or serious bodily injury to the person committing the crime or another person. A threat made six months before the threatened event is not an imminent threat. *See, e.g., Devine v. State*, 786 S.W.2d 268; *Anguish v. State*, 991 S.W.2d 883 (four days); *Smith v. State*, 949 S.W.2d 333 (four months).

Moreover, there are other circumstances pertaining to the fire and McDowell's actions that tend to support the jury's failure to find McDowell's duress claim credible. On the day before the fire, McDowell slipped into her aunt and uncle's house. While there, she took six guns and pawned two of them. She also pawned her aunt and uncle's VCR and DVD player and took their computer. McDowell's children, whom she said Washington threatened to kidnap, were nearly grown and Washington did not have easy access to them. McDowell admitted she burned a motor home in Wise County about three days before she burned her aunt and uncle's house.

■ McDowell also contends the evidence is insufficient to support the jury's finding that she used gasoline as a deadly weapon in committing the arson. We reject this contention. Gasoline is not a deadly weapon per se, but in the manner of its use or intended use, it can be capable of causing death or serious bodily injury, and therefore can constitute a deadly weapon according to the definition of that term in Section 1.07(a)(17)(B) of the Texas Penal Code. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2006); *Rogers v. State*, 908 S.W.2d 239 (Tex.App.-El Paso 1995, no pet.); *Rice v. State*, 771 S.W.2d 599, 601 (Tex.App.-Houston [14th Dist.] 1989, no pet.). Several firefighters, well trained in fighting fires and ascertaining the causes of them, testified that in the manner of its use, gasoline as used by McDowell in this case was a deadly weapon. Two firefighters were injured, one seriously, in the fire when the intense heat burned them through their fire-resistant helmets.

In her last issue, McDowell contends the trial court erred in denying her application for community supervision. A defendant is eligible for community supervision under Article 42.12, Section 4(e) of the Texas Code of Criminal Procedure if she file's a sworn motion that she has not previously been convicted of a felony in this or any other state. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(e) (Vernon 2006). McDowell filed a sworn motion, as required, alleging she had never been convicted of a felony, but the evidence at trial showed that in 1986 she was convicted of aggravated possession of methamphetamine and was placed on probation for ten years. McDowell argues that she was nevertheless eligible for community supervision for the current conviction because she fulfilled her former probation and was discharged from it in 1996. We disagree. Unless there has been an express finding by the trial court that the defendant was exonerated from the previous finding of guilt, the defendant is still ineligible for community supervision even though she has been discharged from community supervision and the conviction is set aside or even if she has been pardoned. *See Taylor v. State,* 612 S.W.2d 566 (Tex.Crim. App. [Panel Op.] 1981); *Watkins v. State,* 572 S.W.2d 339, 343 (Tex.Crim.App.1978); *Samaniego v. State,* 647 S.W.2d 762, 764 (Tex.App.-Austin 1983, no pet.).

For all the reasons stated, we affirm the judgment of the trial court.

